ALMA PERSON, PROSECUTOR, v. FIREMEN'S INSURANCE
CO., DEFENDANT.

Argued October 1, 1940—Decided April 21, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *Charles Hershenstein.*

For the defendant, *Henry M. Grosman* and *Isidor Kalisch.*

The opinion of the court was delivered by

DONGES, J. A single question is involved in this case,
namely, did the death of prosecutor's husband result from an
electric shock said to have been sustained on November 23d,
1938? The Compensation Bureau concluded that it did.
Judge Flanagan, for the Essex County Court of Common
Pleas, determined that petitioner failed to establish that any
shock received by prosecutor's husband on that day produced
his death, which occurred on January 26th, 1939.

It is undisputed that decedent was employed by defendant
as an electrician; that prosecutor and one daughter were
dependents of deceased at the time of his death; that deceased
went to the infirmary maintained by defendant and received
treatment for his hands which had been injured by a "flash"
or "ground" while working on a panel board in defendant's
building; and that the injury consisted of "both hands
blackened, no blisters or break in the skin." The prosecutor

testified as to the condition of her husband when he arrived home the day of the occurrence. She testified that he was always in good health, and that on the day in question he came home with both hands bandaged; that he was "pale and did not look himself;" that he could not get his breath; and that he retired at once. The claim is that the shock of an electric "short" so affected deceased that it was the ultimate cause of death.

To support this claim, petitioner at the hearing in the Compensation Bureau produced testimony that, in addition to the condition of deceased on the day of the alleged shock, as above described, on November 26th, three days after the occurrence, deceased was in bad physical condition, being brought home from work in a taxicab and, as described by prosecutor, "he was gray looking and very sick, he collapsed on the floor and the taxi driver drove him home." Deceased did not thereafter return to his work.

The petitioner sought to support the claim of fatal electric shock by a written statement of one Farley, who was an electrician in defendant's employ. It appears beyond question, however, that Farley was not present at the place of the alleged accident and his only information came from decedent; that Farley was working at Blairstown, about sixty-five miles from the scene of decedent's work on the day in question. His written statement touching matters of which he had no knowledge was given to help decedent with respect to the collection of some insurance. Farley did testify to seeing decedent several days following the accident and that he had every appearance of suffering from a cold.

On or about November 26th, deceased was visited by Dr. Furne, and on or about November 27th, by Dr. Brick, and on November 29th, by Dr. Bedell, who was called by petitioner from the Jersey City Medical Center. Another doctor from the Center also visited decedent and advised that X-ray pictures be taken and on December 26th they were taken. Both Dr. Furne and Dr. Brick testified that they were given no history of an alleged accident. Dr. Brick testified that he treated decedent in September and December, 1938, for grippe colds.

The only testimony from which it might appear that decedent suffered a severe electrical shock came from his wife, the prosecutor. There is much to the contrary.

Julian Bent, foreman in charge of decedent, testified that decedent told him at four P. M. that he had made a short on the board while he had a screw driver in one hand and pliers in the other. He further testified that decedent did not appear to be in any distress; that he made no complaints and finished the day's work. He further testified that he had excused decedent from work on eight or ten occasions because of colds in his chest.

Miss Kathleen Smythe, in charge of defendant's infirmary, testified that on the morning of November 26th the bandages were removed from decedent's hands because they appeared to be all right and there was no further need for bandages. She testified that her records of deceased showed: "September 20th to 23d, 1938, remained home due to cold. November 23d, 1938, both hands blackened by electric flash, no evidence of burn blister, benzol compound applied. November 25th, 1938, dressing removed, hands O. K. November 26th, while working in basement complained he was not feeling well due to cold, he was perspiring freely and sent home in taxi; later his wife reported he had pneumonia, deceased January 26th, 1939, at 1.45 A. M., diagnosis lobar pneumonia, cardiac failure." It is to be noted that this witness orally testified that she removed the bandages on November 26th, whereas the written record indicates the date was the 25th, but the discrepancy is not material.

Miss Agnes Klinko, assistant to Miss Smythe in the infirmary, testified to the same effect as to treatment of decedent's hands and the removal of the bandages on November 25th, and the absence of any marks or blisters.

We find, therefore, in the testimony of the happening and its treatment, nothing to indicate that decedent suffered a severe shock. Everyone, including decedent, regarded the occurrence of little consequence.

The same conclusion must be reached from a study of the hospital record. Therein it appears that the initial diagnosis was (1) broncho pneumonia, (2) pleurisy, with possibility

of tuberculosis. There was no suggestion of accident. There was an entry "Accident History—Neg." Nowhere in the hospital record is there any record of a heart condition such as would be expected to follow an electric shock of severity. The enlarged heart condition referred to in the hospital records of January 3d, 5th, 15th and 20th related to other causes. This record indicates constant diagnosis of pulmonary trouble with no suggestion of heart trouble, until January 20th, when the first entry of heart failure appears.

The principal cause of death is given in the death certificate as lobar pneumonia, right, with right cardiac failure as a contributing cause of "importance."

The hospital record and treatment of the deceased do not support the claim of prosecutor and are rather persuasive that there was no condition due to a severe electrical shock affecting the deceased. The suggestion of an accident seems to have first come from the prosecutor on January 23d, 1939, three days before decedent's death, when Dr. Bresev, of the hospital staff, made the following note in the hospital record: "it was learned to-day that on day before Thanksgiving day and while at work pt. received a rather severe electrical shock, was knocked out, was unable to return to work; dates all his present illness from that time on. (Information from wife.)" Throughout the hospital record, and in the testimony of other witnesses, is reference to the fact that deceased suffered from colds and pulmonary trouble. The occurrence of November 23d as a factor in deceased's condition seems to have been an afterthought.

Nor do we find support for the claim of prosecutor in the testimony of the physicians called. Three who attended deceased were called to testify. Only one, Dr. Bresev, related death to an injury, and he was in great doubt as to the occurrence of an injury that was in any degree related to deceased's death. But, in any event, any suggestion of injury that could produce the fatal condition was dependent on the statements of prosecutor, and they spring from hearsay and speculation, at the best.

As before stated, Dr. Furne, who was called to treat deceased on November 27th, was given no history of injury shock, nor

was Dr. Brick, who treated deceased in September, 1938, and December, 1938, for grippe colds, given any history of shock or accident. None of the other physicians who attended deceased was called. It is unbelievable that no mention would be made of an injury or shock of the nature suggested in the hypothetical questions to the medical expert witnesses if deceased was suffering therefrom and was wearing bandages on his hands for several weeks, as prosecutor testified. This fact was denied by other witnesses. There being no basis in fact for the condition stated in the hypothetical questions to the experts called by petitioner below, their answers are without value to support her claim.

The burden was upon petitioner to establish that there was causal connection between decedent's death and an accident which was an inducing cause thereof. *Kuropata* v. *National Sugar Refining Co.*, 126 *N. J. L.* 44.

After careful review of all of the testimony, we conclude that petitioner below failed to establish that decedent's death resulted from an accident arising out of and in the course of his employment. The clear weight of the testimony shows that he died from natural causes not related to any accident.

The judgment under review is affirmed, and the writ is discharged.